**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re BAYCOL PRODUCTS LITIGATION | : | MDL No. 1431 (MJD/SRN) |
| This Document Relates to: | : | |
| *Allie Mae Hogan. v. Bayer Corp., et al.* | : | Case No. 02-0451 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Allie Mae Hogan blames Baycol for pain in her left leg between her knee and ankle, for staggering, and for a stroke that she suffered on May 28, 2001. Defendants had nothing to do with these ailments, and defendants are entitled to summary judgment because Ms. Hogan has no competent evidence to support her claims. Rather, plaintiff's only retained expert recanted his initial opinion and testified, after reviewing a more complete set of Ms. Hogan's medical records, that he would not give an opinion that Baycol caused her any injuries or problems. Deposition of Marius T. McFarland, M.D. (Ex. A) at 41:25-42:4. In fact, Dr. McFarland testified affirmatively that Baycol did *not* cause Ms. Hogan any sort of injury or problem. *Id*. at 42:5-9. Additionally, Ms. Hogan's own treating physicians do not attribute her alleged injuries to the use of Baycol.

On this record, Ms. Hogan can present no triable issues of material fact as to whether she sustained an injury caused by Baycol. Accordingly, this Court should enter summary judgment against plaintiff and in favor of defendants. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## STATEMENT OF FACTS

### I. Ms. Hogan's Claims Against Bayer

Ms. Hogan has an extensive medical history including hypertension, diabetes mellitus, hypercholesterol, morbid obesity, edema, tendonitis, arthritis, and degenerative joint disease (DJD). Deposition of Deanna Powell, M.D. (Ex. B) at 23:16-19 (hypertension, diabetes, hypercholesterol), 43:1-3 (DJD), 65:16 (morbid obesity); Deposition of Donald R. Taylor, M.D. (Ex. C) at 10:19-21 (edema), 17:6-7 (tendonitis), 22:23-25 (arthritis). Despite this long history of medical complications, Ms. Hogan now blames Baycol for pain in her left leg from her knee to her ankle, for staggering, and for a stroke she suffered on May 28, 2001. Deposition of Allie Mae Hogan (Ex. D) at 91:20-92:5.

In her initial Petition for Damages, Ms. Hogan alleged that Baycol caused her "severe physical pain, mental and emotional distress, anxiety and other damages." Petition for Damages ¶ 6. Ms. Hogan later limited those allegations to "muscle pain, muscle aches, and staggering." Plaintiff Fact Sheet (Ex. E) § VI.A.1. Ms. Hogan then further modified her claims during her deposition, narrowing them to her pain between her left knee and ankle, staggering, and her stroke. Hogan Dep. (Ex. D) at 101:10-15. Ms. Hogan also testified in her deposition that she is not claiming any "mental, emotional, psychiatric or psychological injuries from taking Baycol." *Id*. at 28:19-29:5.

### II. Ms. Hogan's Baycol Use

Dr. Deanna Powell, one of Ms. Hogan's treating physician, prescribed Ms. Hogan 0.3 mg. of Baycol on November 12, 1998. Powell Dep. (Ex. B) at 20:23. Dr.

Powell prescribed Baycol to lower Ms. Hogan's cholesterol, triglycerides, and low-density lipoproteins. *Id*. at 26:24-27:17. Ms. Hogan remained on the 0.3 mg. dosage until April 10, 2000, at which time her dosage was increased to 0.4 mg. *Id*. at 56:24-58-23. As described below, Ms. Hogan did not take her Baycol consistently. On May 30, 2001, two days after her stroke, hospital doctors placed Ms. Hogan on Lipitor. *Id*. at 75:16-25.

## III. Ms. Hogan's Long History of Stroke Risk

Although Ms. Hogan blames Baycol for her stroke, she has been at risk for having a stroke long before she ever took Baycol. Ms. Hogan has experienced hypertensive episodes since at least January 23, 1992, and her own treating physician, Dr. Taylor, testified that one of the risks of high blood pressure is stroke. Taylor Dep. (Ex. C) at 08:17-20; 19:24-20:2. In fact, in April 1994, four years before Ms. Hogan was prescribed Baycol, Dr. Taylor was concerned that Ms. Hogan could have signs of a stroke. *Id*. at 19:7-15. Dr. Taylor was concerned because on April 5, 1994, Ms. Hogan presented to him complaining of tingling and numbness in her fingertips. *Id*. at 19:7-20:7. Dr. Taylor testified that these symptoms can indicate the beginning of a stroke. *Id*. at 20:3-7.

Dr. Taylor also testified that plaintiff's hypertension was uncontrolled because she was consistently non-compliant with her medications. *Id*. 20:8-11. Indeed, Dr. Taylor testified that at times he felt it was "almost impossible to treat" Ms. Hogan because of her non-compliance with her medications. *Id*. at 15:22-16:4. For example, on

September 19, 1995, Ms. Hogan had been non-complaint with her blood pressure medication for an entire year. *Id*. at 20:16-20.

Similarly, Dr. Powell identified risk factors for stroke. On the day Dr. Powell prescribed Baycol, Ms. Hogan presented with morbid obesity, high blood pressure, and high cholesterol. Powell Dep. (Ex. B) at 25:18-26:9. Dr. Powell also testified that, on May 7, 2001, Ms. Hogan reported that she had been out of her Baycol prescription for several months. *Id.* at 73:5-10.

Ms. Hogan experienced a stroke on May 28, 2001, which was formally diagnosed on May 30, 2001. Hogan medical records (Ex. F) at LSU000204amh.

**IV. Ms. Hogan's Long History of Body Pain**

Ms. Hogan has complained of musculoskeletal pain in various parts of her body since as early as December 6, 1995. Taylor Dep. (Ex. C) 22:3-9 (complaints of upper-body arthritis). She did not, however, experience pain in her lower extremities until after her stroke. Medical records (Ex. F) at LSU000313-14amh (record dated July 23, 2001, complaint of pain in lower extremities appears for first time). Indeed, the exact pain for which she blames Baycol, pain between her left knee and foot, did not appear in her medical records until October 31, 2005, more than four years after she stopped taking Baycol. Medical records (Ex. F) at LSU000725-26amh.

Additionally, Dr. Powell testified that throughout Ms. Hogan's use of Baycol, she never once complained of symptoms consistent with an adverse reaction to Baycol. Powell Dep. (Ex. B) at 74:22-25. Ms. Hogan has never been diagnosed with rhabdomyolysis. *Id*. at 77:4-13.

## V. Ms. Hogan's Expert Has Withdrawn His Opinion on Causation

When plaintiff's expert, Dr. McFarland, gave his initial opinion in support of Ms. Hogan's claim, he relied on only six months of medical records out of plaintiff's 40-plus year medical history. McFarland Dep. (Ex. A) at 13:20-14:2. He also relied primarily on plaintiff's recitation of her own medical history, which was riddled with inaccuracies. *Id.* at 13:1-9.

When Ms. Hogan provided her medical history to Dr. McFarland, she either misreported or failed to disclose completely certain important details. Most significantly, she failed to disclose was her 30-40 year history of significant hypertension. *Id.* at 18:3-11. Ms. Hogan also failed accurately to report when she experienced her stroke. Dr. McFarland was not aware that Ms. Hogan had run out of her Baycol prescription in the months leading up to her stroke. *Id.* at 32:7-18. Finally, although Dr. McFarland knew that Ms. Hogan suffered from arthritis and degenerative joint disease, he was not aware that the pain in her lower extremities did not begin until after she experienced her stroke. *Id*. 38:13-25.

Dr. McFarland agreed during his deposition that a different medical history could affect the opinion he provided:

> Q: If the history was, if [Ms. Hogan's] medical history was different than she relayed to you on May the 10th of 2004, is it fair to say that your opinions could be affected by the change in that history?
>
> A: Yes, it is.

*Id*. at 26:22-27:1. In fact, when Dr. McFarland learned more about Ms. Hogan's medical history, he recanted his opinion on causation. During his deposition, Dr. McFarland gave the following testimony:

> Q: Doctor, after having gone through Ms. Hogan's medical history, is it your opinion and will you give an opinion in this case that Baycol caused her any sort of injury or problem.
>
> A: No
>
> Q: So that would, is it your opinion that Baycol did not cause her any sort of injury or problem that you can tell from what you've reviewed and the history we've gone over?
>
> A: That's correct.

*Id*. at 41:25-42:9. Not only did Dr. McFarland recant his opinion that Baycol caused Ms. Hogan any injury, he opined that her complaints of "musculoskeletal pain and weakness, especially the weakness in her extremities on the left side" can all be explained by her stroke. *Id*. at 43:1-7. Dr. McFarland also testified that while uncontrolled hypertension can lead to a stroke, there is no scientific support for the claim that a statin medication can lead to a stroke. *Id*. at 24:24-25:2; 38:5-8.

## ARGUMENT

### I. LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, do not raise a genuine issue of material fact supporting plaintiff's claims, such that Bayer is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp.,* 477 U.S. at 323. Where, as here, plaintiff fails to make a showing sufficient to establish the existence of an essential

element of her claim, and on which she will bear the burden of proof at trial, summary judgment should be granted. *See Celotex Corp.*, 477 U.S. at 324-25.

## II. SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF HAS NO COMPETENT EVIDENCE THAT BAYCOL CAUSED HER ALLEGED INJURIES.

Ms. Hogan asserts claims for negligence, fraud and misrepresentation, and breach of warranty against redhibitory defects against Bayer. Petition for Damages at ¶¶ 26–38. She also asserts claims under the Louisiana Product Liability Act (LPLA). Petition for Damages ¶¶ 23–24. Under the LPLA, a plaintiff may "not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." LA. Rev. Stat. Ann. § 2800.52 (2007). Thus, although plaintiff has asserted claims other than her LPLA claim, under Louisiana law, she may only recover, if at all, on her LPLA claims.

To recover under the LPLA, plaintiff must prove both causation in fact and that the product defect was "the most probable cause" of her injury. *Wheat v. Pfizer, Inc.*, 31 F.3d 340, 342 (5th Cir. 1994). Under Louisiana Law[1] and this Court's PTO 114, plaintiff must establish causation by expert medical testimony. *Hutchinson, M.D. v. Shah*, 648 So.2d 451, 452 (La. Ct. App. 1995) ("[w]hen the conclusion regarding medical causation is not one within common knowledge, expert medical testimony is required"); PTO 114 §§ I.A., C. (requiring all plaintiffs to file Rule 26(a)(2) expert reports in support

---

[1] Under Pretrial Order 94, plaintiff's claims must be evaluated under the laws of the state where the plaintiff resides and allegedly was injured. *See* PTO 94, at 16-17. As Ms. Hogan resides in Louisiana, ingested Baycol in Louisiana, and allegedly was injured in Louisiana, Louisiana substantive law governs.

of injury and causation); *see In re Baycol Prods. Litig.*, 321 F. Supp. 2d 1118, 1126 (D. Minn. 2004) (noting that the claims at issue in this MDL involve "complex questions of medical causation beyond the understanding of a lay person"). The standard for proving causation under Louisiana law is quite clear: Ms. Hogan must produce expert medical evidence that it was "more likely than not" that Bayer's actions or negligence caused her injuries. *Hutchinson, M.D.*, 648 So.2d at 452. The "mere possibility" of a causal connection is insufficient. *Creel v. S.A. Tarver & Son Tractor Co., Inc.*, 537 So.2752, 753 (La. Ct. App. 1988).

Plaintiff has failed to meet her burden of establishing by expert evidence that Baycol "more likely than not" caused her injuries by expert evidence. Her expert, Dr. McFarland, recanted his opinion on causation, stating in his deposition that he would *not* give an opinion in this case that Baycol caused Ms. Hogan's injuries. McFarland Dep. (Ex. A) at 41:25-42:4. Not only that, but Dr. McFarland affirmatively testified that Baycol *did not* cause Ms. Hogan *any injury* or problem, that there is no scientific support for the claim that a statin medication can lead to a stroke, and that the pain she blames on Baycol can be attributed to her stroke. *Id*. at 38:5-8; 41:9; 43:1-7.

When Dr. McFarland gave his initial opinion in his Expert Report, he relied on a very limited set of medical records and an inaccurate account of plaintiff's medical history. *Id.* at 13:20-14:2; 18:3-11 (discussing plaintiff's failure to disclose her long history of hypertension). Once Dr. McFarland learned the details of Ms. Hogan's extensive history of hypertension, high cholesterol, morbid obesity, and non-compliance

with medical history, he changed his opinion and testified that Baycol did not cause Ms. Hogan any injury. *Id.* at 41:25-42:4

Further, plaintiff's treating physicians do not relate her injuries to Baycol. Both of Ms. Hogan's treating physicians testified that Ms. Hogan has been at risk of suffering a stroke for many years — long before she was ever prescribed Baycol. *Id.* at 19:7-20:7; Powell Dep. (Ex. B) at 25:18-26:9. Ms. Hogan's medical records show her long history of high blood pressure, morbid obesity, high cholesterol, and medical non-compliance. *See, e.g.*, Taylor Dep. (Ex. C) at 18:17-20:2 (discussing history of high blood pressure and non-compliance); Powell Dep. (Ex. B) at 26:24-27:17 (discussing history of high cholesterol). All three physicians testified separately that these symptoms can lead to a stroke while plaintiff's own expert further testified that there is no scientific support for the claim that statins cause strokes. Taylor Dep. (Ex. C) at 19:7-20:7 (discussing risk of stroke from high blood pressure); Powell Dep. (Ex. B) at 25:18-26:9 (discussing risk of stroke from morbid obesity, high blood pressure, and high cholesterol); McFarland Dep. (Ex. A) at 24:24-25:2; 38:5-8 (discussing risk of stroke from high blood pressure and no support for claim that statins lead to stroke).

With respect to leg pain, again, this particular ailment did not appear in Ms. Hogan's medical records until after she had her stroke. Medical records (Ex. F) at 313-14; 725-26. Even her own expert testified that these specific pains can be explained by her stroke. McFarland Dep. (Ex. A) at 43:1-7. Moreover, Dr. Powell testified that throughout her use of Baycol, Ms. Hogan never once complained of symptoms consistent

with an adverse reaction to Baycol and that she has never been diagnosed with rhabdomyolysis. Powell Dep. (Ex. B) at 74:22-25; 77:4-13.

Because Dr. McFarland found no causal connection between Ms. Hogan's injuries and her ingestion of Baycol, his expert report, in conjunction with his deposition, is insufficient to create a genuine issue of material fact regarding the cause of Ms. Hogan's alleged injuries. Therefore, this Court should enter summary judgment in favor of defendants and against Ms. Hogan. *Celotex Corp.*, 477 U.S. at 323.

## CONCLUSION

For these reasons, defendants respectfully requests that the Court enter summary judgment in favor of defendants and against plaintiff.

Dated: March 9, 2007

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

/signature on file/
Susan A. Weber
James W. Mizgala
Susan M. Razzano
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Scott A. Smith
Tracy J. Van Steenburgh
HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A.
220 South Sixth Street, Suite 600
Minneapolis, Minnesota 55402-4501
(612) 338-1838

/signature on file/
Fred T. Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

Paul J. Zidlicky
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

Richard K. Dandrea
ECKERT SEAMENS CHERIN & MELLOTT LLC
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA 15219
(412) 566-6000

Peter W. Sipkins (No. 101540)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600

Douglas R. Marvin
WILLIAMS & CONNOLLY
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Charles P. Blanchard
Peter J. Rotolo III
CHAFFE McCALL LLP
230 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
(504) 585-7000

*Counsel for Bayer Corporation*